**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| GENERAL MICRO SYSTEMS, INC., | Case No. 1:25-cv-09157-KPF |
| *Plaintiff,* | Hon. Katherine P. Failla |
| v. |  |
| EVERCORE GROUP L.L.C., IRA WOLFSON, and DOES 1-25, |  |
| *Defendants.* |  |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Matthew A. Schwartz
Aneesa Mazumdar
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
schwartzmatthew@sullcrom.com
mazumdara@sullcrom.com

*Attorneys for Defendants Evercore*
*Group L.L.C. and Ira Wolfson*

February 13, 2026

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................... 1

ALLEGATIONS OF THE COMPLAINT .................................................................................... 3

    A.    GMS and Evercore Enter Into the Engagement Letter................................................. 3
    B.    Defendants Commence the Sale Process........................................................................ 6
    C.    GMS Terminates the Engagement Letter....................................................................... 6
    D.    GMS Files Suit.................................................................................................................... 7

STANDARD ON THIS MOTION................................................................................................. 8

ARGUMENT .................................................................................................................................... 9

I.    GMS'S BREACH OF FIDUCIARY DUTY CLAIM IS CONTRARY TO THE
ENGAGEMENT LETTER AND DUPLICATIVE OF ITS BREACH OF
CONTRACT CLAIM ........................................................................................................... 9

    A.    Evercore and Wolfson Did Not Owe Fiduciary Duties to GMS ............................... 9
    B.    GMS's Claim Is Duplicative of Its Breach of Contract Claim .................................12

II.    GMS FAILS TO PLEAD THAT EVERCORE BREACHED THE LETTER............................13

III.    GMS'S BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR
DEALING CLAIM IS DUPLICATIVE AND DEFICIENT.................................................15

    A.    GMS's Claim Is Duplicative of Its Breach of Contract Claim .................................15
    B.    GMS Fails to Plead a Breach of the Implied Covenant ............................................16

IV.    GMS'S PROFESSIONAL NEGLIGENCE CLAIM IS DUPLICATIVE, DEFICIENT,
AND BARRED BY THE ECONOMIC LOSS DOCTRINE................................................18

    A.    GMS's Claim Against Evercore is Duplicative of Its Breach of Contract
Claim ..................................................................................................................................19
    B.    The Engagement Letter Bars Liability for Professional Negligence...................19
    C.    Evercore and Wolfson Did Not Owe GMS a Professional Duty of Care.............20
    D.    The Economic Loss Doctrine Prohibits GMS's Claim ..............................................20

V.    GMS'S INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
ADVANTAGE CLAIM IS DEFICIENT ...........................................................................21

VI.    GMS'S COMMON LAW UNFAIR COMPETITION CLAIM IS DEFICIENT........................23

VII.    GMS FAILS TO ADEQUATELY PLEAD NEGLIGENT MISREPRESENTATION ..............24

VIII.    GMS'S DECLARATORY JUDGMENT CLAIM IS DEFICIENT..........................................26

-ii-

**CONCLUSION** ................................................................................................................................27

**TABLE OF AUTHORITIES**

*Page(s)*

**Cases**

*In re 22 Fiske Place, LLC*,
2022 WL 2819093 (S.D.N.Y. July 28, 2022) ................................................................... 9

*511 West 232nd Owners Corp.* v. *Jennifer Realty Co.*,
773 N.E.2d 496 (N.Y. 2002) ................................................................................................18

*1357 Tarrytown Road Auto, LLC* v. *Granite Props., LLC*,
142 A.D.3d 976 (N.Y. App. Div. 2016) .............................................................................17

*Access Nursing Servs.* v. *St. Consulting Grp.*,
137 A.D. 3d 678 (N.Y. App. Div. 2016) ...........................................................................23

*Alitalia Linee Aeree Italiane, S.p.A.* v. *Airline Tariff Publ'g Co.*,
580 F. Supp. 2d 285 (S.D.N.Y. 2008) ...............................................................................12

*Alley Sports Bar, LLC* v. *SimplexGrinnell, LP*,
58 F. Supp. 3d 280 (W.D.N.Y. 2014)................................................................................25

*Arista Recs., LLC* v. *Doe 3*,
604 F.3d 110 (2d Cir. 2010) ...............................................................................................14

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009) ............................................................................................................... 8

*ATSI Comm'cns Inc.* v. *Shaar Fund, Ltd.*,
2004 WL 616123 (S.D.N.Y. Mar. 30, 2004) ...................................................................23

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) .................................................................................................. 8

*Aventine Inv. Mgmt.* v. *Can. Imperial Bank of Com.*,
265 A.D.2d 513 (N.Y. App. Div. 1999) ...........................................................................16

*Bayerische Landesbank N.Y. Branch* v. *Aladdin Cap. Mgmt. LLC*,
692 F.3d 42 (2d Cir. 2012) .................................................................................................19

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007) ...........................................................................................................8, 9

*Bilinski* v. *Keith Haring Found.*,
632 F. App'x 637 (2d Cir. 2015)........................................................................................15

*Boccardi Cap. Sys., Inc.* v. *D.E. Shaw Laminar Portfolios, L.L.C.*,
  355 F. App'x 516 (2d Cir. 2009)..............................................................................................11

*CDC Newburgh, Inc.* v. *STM Bags, LLC*,
  692 F. Supp.3d 205 (S.D.N.Y. 2023) ............................................................................ 23, 24

*Conf. Mgmt. Corp.* v. *BMT Publ'ns, Inc.*,
  1991 WL 41637 (S.D.N.Y. 1991)...........................................................................................26

*Cosmas* v. *Hassett*,
  886 F.2d 8 (2d Cir. 1988)......................................................................................................22

*Cruz* v. *TD Bank N.A.*,
  855 F. Supp. 2d 157 (S.D.N.Y. 2012) .................................................................................21

*Deutsche Bank Secs., Inc.* v. *Rhodes*,
  578 F. Supp. 2d 652 (S.D.N.Y. 2008) .................................................................................20

*EED Holdings* v. *Palmer Johnson Acquisition Corp.*,
  387 F. Supp. 2d 265 (S.D.N.Y. 2004) .................................................................................21

*Ellington Credit Fund, Ltd.* v. *Select Portfolio Servicing, Inc.*,
  837 F. Supp. 2d 162 (S.D.N.Y. 2011) .................................................................................11

*Fifth St. Fin. Corp.* v. *Toll*,
  2013 WL 3757037 (S.D.N.Y. July 17, 2013)......................................................................23

*GCA Advisors, LLC* v. *Intersections, Inc.*,
  230 A.D.3d 975 (N.Y. App. Div. 2024) ..............................................................................27

*Geller Biopharm, Inc.* v. *Amunix Pharms., Inc.*,
  2021 WL 4155015 (S.D.N.Y. Sept. 13, 2021)....................................................................27

*Golden* v. *Zwickler*,
  394 U.S. 103 (1969) ...............................................................................................................26

*Hotel 57 L.L.C.* v. *Integral Contracting, Inc.*,
  2023 WL 6390529 (S.D.N.Y. Oct. 2, 2023).......................................................................21

*Hydro Invs., Inc.* v. *Trafalgar Power Inc.*,
  227 F.3d 8 (2d Cir. 2000).......................................................................................................25

*In Touch Concepts, Inc.* v. *Cellco P'ship*,
  949 F. Supp. 2d 447 (S.D.N.Y. 2013) .................................................................................17

*Ivison* v. *Extend Fertility, LLC*,
  2024 WL 1795411 (S.D.N.Y. Apr. 25, 2024) ....................................................................20

-iv-

*JN Contemp. Art LLC* v. *Phillips Auctioneers LLC*,
   29 F.4th 118 (2d Cir. 2022) .......................................................................................15

*Karmilowicz* v. *Hartford Fin. Servs. Grp., Inc.*,
   494 F. App'x 153 (2d. Cir. 2012)................................................................................. 4

*KSFB Mgmt. LLC*, v. *Focus Fin. Partners, LLC*,
   225 N.Y.S.3d 606 (N.Y. Sup. Ct. 2025)....................................................................11

*Lombard* v. *Econ. Dev. Admin. of Puerto Rico/Puerto Rico Indus. Dev.*,
   2000 WL 347177 (S.D.N.Y. 2000) .............................................................................22

*M&T Bank Corp.* v. *Gemstone CDO VII, Ltd.*,
   891 N.Y.S.2d 578 (N.Y. App. Div. 2009) .................................................................10

*Maalouf* v. *Salomon Smith Barney, Inc.*,
   2003 WL 1858153 (S.D.N.Y. April 10, 2003)..........................................................12

*Maspeth Fed. Sav. & Loan Ass'n* v. *Fidelity Info. Servs. LLC*,
   275 F. Supp. 3d 411 (E.D.N.Y. 2017) .......................................................................19

*McBeth* v. *Porges*,
   171 F. Supp.3d 216 (S.D.N.Y. 2016) .........................................................................24

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   998 F. Supp. 2d 157 (S.D.N.Y. 2014) .......................................................................20

*In re Mid–Island Hosp., Inc.*,
   276 F.3d 123 (2d Cir. 2002) ......................................................................................... 9

*Munoz-Nagel* v. *Guess, Inc.*,
   2013 WL 1809772 (S.D.N.Y. Apr. 30, 2013) ...........................................................14

*Mut. Fire, Marine & Inland Ins. Co.* v. *Adler*,
   726 F. Supp. 478 (S.D.N.Y. 1989)............................................................................. 7

*N. Shipping Funds I, LLC* v. *Icon Cap. Corp.*,
   921 F. Supp. 2d 94 (S.D.N.Y. 2013) .........................................................................12

*Pierson* v. *Willets Point Contracting Corp.*,
   899 F. Supp. 1033 (E.D.N.Y. 1995).........................................................................13

*Reynolds* v. *Behreman Bros. Mgmt. Corp.*,
   2020 WL 1957372 (S.D.N.Y. Apr. 23, 2020) ...........................................................19

*Robin Bay Assocs., LLC* v. *Merrill Lynch & Co.*,
   2008 WL 2275902 (S.D.N.Y. June 3, 2008) .............................................................12

*Rogers* v. *HSN Direct Joint Venture*,
    1998 WL 566804 (S.D.N.Y. Sept. 4, 1998) ..................................................................................10

*Shannon* v. *Goon*,
    2013 WL 160274 (N.D.N.Y. Jan. 15, 2013) .................................................................................15

*Sheth* v. *N.Y. Life Ins. Co.*,
    273 A.D.2d 72 (N.Y. App. Div. 2000) ........................................................................................25

*Sjogren* v. *Bd. of Trs. of Dutchess Cmty. Coll.*,
    216 A.D.3d 836 (N.Y. App. Div. 2023) ......................................................................................18

*Sofi Classic S.A. de C.V.* v. *Hurowitz*,
    444 F. Supp. 2d 231 (S.D.N.Y. 2006) .........................................................................................21

*Summit Props. Int'l, LLC* v. *Ladies Pro. Golf Ass'n*,
    2010 WL 2382405 (S.D.N.Y. June 14, 2010)................................................................................ 9

*TPTCC NY, Inc.* v. *Radiation Therapy Servs., Inc.*,
    784 F. Supp. 2d 485 (S.D.N.Y. 2011) ....................................................................................9, 11

*Twohig* v. *Shop-Rite Supermarkets, Inc.*,
    519 F. Supp.3d 154 (S.D.N.Y. 2021) ..........................................................................................25

*Velvet Underground* v. *Andy Warhol Found. for the Visual Arts, Inc.*,
    890 F. Supp. 2d 398 (S.D.N.Y. 2012) .........................................................................................27

*Warren* v. *John Wiley & Sons, Inc.*,
    952 F. Supp. 2d 610 (S.D.N.Y. 2013) .........................................................................................14

*Wiener* v. *Lazard Freres & Co.*,
    672 N.Y.S.2d 8 (N.Y. App. Div. 1998)........................................................................................11

*Williams* v. *Calderoni*,
    2012 WL 691832 (S.D.N.Y. Mar. 1, 2012)..................................................................................14

**Statutes**

28 U.S.C. § 1332(a)...............................................................................................................................27

28 U.S.C. § 2201...................................................................................................................................27

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ...........................................................................................10

Fed. R. Civ. P. Rule 8............................................................................................... 2, 3, 14, 15, 23

-vii-

Fed. R. Civ. P. Rule 9 ...................................................................................................................................3, 22

Fed. R. Civ. P. Rule 12 ...................................................................................................................................1, 8

Pursuant to Rule 12(b)(6), Defendants Evercore Group L.L.C. ("Evercore") and Ira Wolfson (together, "Defendants") respectfully move this Court to dismiss the Complaint filed by General Micro Systems, Inc. ("GMS") in its entirety.

**PRELIMINARY STATEMENT**

This case concerns an agreement ("Engagement Letter") between Evercore, an investment bank, and its former client, GMS, under which Evercore agreed to provide GMS with financial advisory services in connection with a possible sale of GMS. On June 27, 2025, after the erratic behavior of GMS's chief executive officer torpedoed the sales process, GMS terminated the Engagement Letter in an attempt to avoid reimbursing Evercore for its expenses and paying Evercore a possible "tail fee," both of which are provided for in the Engagement Letter. After Evercore insisted that GMS pay the expenses, GMS raced to the Superior Court of California to file this 8-count lawsuit against Evercore and Wolfson, the Evercore Senior Managing Director leading the relationship. Defendants removed this case to the Central District of California on the basis of diversity jurisdiction. Then, citing the exclusive forum selection clause in the Engagement Letter, Defendants moved to transfer the case to this Court; the Central District saw through GMS's meritless arguments in opposition to transfer and sent the case here.

Since the transfer, GMS has amended its complaint twice, forced by two Rule 11 letters sent by Defendants raising the demonstrable misstatements in GMS's pleadings. As a result of these letters, GMS has now had to acknowledge that Defendants disclosed their relationship with Veritas Capital Fund Management LLC ("Veritas") before GMS entered into the Engagement Letter, that Defendants provided GMS with explanations as to why bidders dropped out of the sale process, and that GMS did communicate with potential buyers on the

possible sale.  This Court should now see through GMS's meritless and overstuffed pleadings and dismiss this action.

*First*, this Court should dismiss GMS's claim against Evercore and Wolfson for breach of fiduciary duty.  The parties specifically agreed in the Engagement Letter that Evercore was not acting "in a fiduciary capacity" and New York law confirms that investment bankers are not fiduciaries for their clients.  Moreover, this claim, at least as asserted against Evercore, is duplicative of GMS's breach of contract claim because it rests on the same alleged conduct and seeks no unique damages.

*Second*, this Court should dismiss GMS's breach of contract claim against Evercore because GMS acknowledges that Evercore performed its obligations under the Engagement Letter and all of GMS's allegations related to a potential breach are supported only by GMS's "information and belief," rather than any factual statements, as Rule 8 requires.

*Third*, this Court should dismiss GMS's claim against Evercore for breach of the implied covenant of good faith and fair dealing.  This claim is based on the same factual allegations underpinning GMS's breach of contract claim and so cannot proceed.

*Fourth*, this Court should dismiss GMS's claim for professional negligence against Evercore and Wolfson.  This claim is deficient, seeks damages that are contractual in nature and is thus barred by the economic loss doctrine, and in any event, the claim against Evercore is again duplicative of GMS's breach of contract claim.

*Fifth*, this Court should dismiss GMS's claim against Evercore and Wolfson for intentional interference with prospective economic advantage.  This claim sounds in fraud but fails to meet the heightened pleading standards required by Rule 9.  It also does not meet the more liberal pleading standards of Rule 8.

*Sixth*, this Court should dismiss GMS's claim for common law unfair competition against Evercore and Wolfson because GMS fails to plead that Defendants misappropriated GMS's commercial goodwill or sought to pass off their products as belonging to GMS.

*Seventh*, this Court should dismiss the negligent misrepresentation claim against Wolfson.  This claim is based on alleged fraudulent conduct but does not meet Rule 9.  Moreover, the alleged misrepresentations are foreclosed by the Engagement Letter and there was also no special relationship between GMS and Wolfson that could give rise to a negligent misrepresentation claim.

*Eighth*, this Court should dismiss GMS's claim for declaratory judgment.  This claim alleges that the tail period provision of the Engagement Letter is unenforceable because of Defendants' alleged breaches of the Engagement Letter and acts of bad faith, and that in the alternative, enforcement would be contrary to public policy.  But GMS has failed to plead any immediate interest in having the tail period provision held unenforceable, and a declaratory judgment on the provision's enforceability is thus unwarranted.  And New York caselaw squarely affirms that tail period provisions are not contrary to public policy.

**ALLEGATIONS OF THE COMPLAINT**

**A.  GMS and Evercore Enter Into the Engagement Letter.**

On December 6, 2022, GMS and Evercore entered into the Engagement Letter under which Evercore would serve as GMS's exclusive financial advisor.  (*See* ECF No. 43 ("SAC")

¶ 19; Ex. 1[1].)[2]  GMS selected Evercore upon the advice of Hugh Evans, a Managing Partner at Veritas.  (SAC ¶¶ 14, 19.)

Under the Engagement Letter, Evercore was to:

provide financial advisory services to [GMS] in connection with the possible sale, directly or indirectly, of all or a portion of [GMS], regardless of the form or structure thereof (a "Transaction"). Evercore will provide financial advisory services as customarily may be provided by Evercore in connection with engagements of this type.

(Ex. 1 at 1.)  In exchange, if GMS were to execute a sale, GMS would pay Evercore a success fee, in an amount based on the value of the acquisition.  (*Id.*)  In addition, GMS agreed to "reimburse Evercore quarterly, and upon consummation of the Transaction or upon termination of this Agreement, for its reasonable expenses . . . incurred in connection with its engagement."  (*Id.* at 2.)

The Engagement Letter also explicitly disclaims that Evercore would owe GMS any fiduciary duties:

The Company acknowledges that Evercore is acting hereunder as an independent contractor with duties solely to the Company, that Evercore is not acting as an agent of the Company or its security holders, employees, or creditors or in a fiduciary capacity with respect to the Company or its security holders, employees or creditors and that Evercore is not assuming any duties or obligations other than those expressly set forth in this Agreement.

---

[1] All exhibits are exhibits to the Declaration of Matthew A. Schwartz, dated February 13, 2026.

[2] Defendants draw these factual allegations from the Complaint "together with any statements or documents incorporated in it by reference, as well as . . . documents that the plaintiff[] either possessed or knew about and upon which they relied in bringing the suit." *Karmilowicz* v. *Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 156 (2d Cir. 2012).  Defendants treat these allegations as true for this motion but dispute their accuracy and reserve all rights to contest GMS's representation of the facts if and when necessary.

(*Id.* at 4.)  It also provides that Evercore could not guarantee achievement of any particular

strategic or financial goal:

> The Company acknowledges that the Company's appointment of Evercore
> pursuant to this Agreement is not intended, and that Evercore is not in a
> position, to achieve or guarantee the closing of the Transaction or the
> Company's achievement of the strategic or financial goals underlying the
> Transaction.

(*Id.*)  The Engagement Letter also contains a broad choice-of-law provision that specifies New

York law and governs "[t]his Agreement and any claim related directly or indirectly to this

Agreement."[3]  (*Id.* at 6.)

The Engagement Letter also includes an exculpation clause that further makes clear

that GMS:

> "agrees that no Indemnified Person shall have any liability (whether in
> contract, tort or otherwise) to the Company . . . related to, arising out of or in
> connection with Evercore's engagement, Evercore's performance of any
> service in connection therewith or any transaction contemplated thereby,
> except to the extent that any loss, claim, damage, liability or expense incurred
> by the Company is found by a court of competent jurisdiction in a final non-
> appealable judgment to have resulted primarily from such Indemnified
> Person's gross negligence, bad faith or willful misconduct."

(*Id.* at 8-9).  As defined under the Engagement Letter, Mr. Wolfson and Evercore are each an

"Indemnified Person."  (*Id.* at 8.)

The Engagement Letter allows GMS or Evercore to terminate the engagement at any

time, but provides a "Tail Provision" specifying that:

> in the event that any time during the 9 months following termination of this
> Agreement (the "Tail Period"), the Company consummates a Transaction or
> enters into an agreement that subsequently results in a Transaction with any
> party whom Evercore had discussions or communications with regarding a

---

[3] Schedule I of the Engagement Letter, which includes an Indemnification Agreement, also
contains a choice-of-law provision nearly identical to the choice-of-law provision in the
Engagement Letter.  (Ex. 1 at 10.)

> Transaction during the term of this Agreement (the "Evercore Buyers"), the Company shall pay Evercore the Success Fee as set forth above.

(*Id.* at 4.)  Although the engagement would terminate once either GMS or Evercore gave written notice, the Tail Provision survives termination.  (*Id.*)  And finally, the Engagement Letter contains a merger clause confirming that it "embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof."  (*Id.* at 5.)

### B.  Defendants Commence the Sale Process.

After the Engagement Letter was executed, Evercore began finding an acquirer for GMS.  (SAC ¶¶ 26-31.)  Wolfson, a Senior Managing Director at Evercore who had been in contact with GMS prior to the engagement, led the Evercore team.  (*Id.* ¶ 19.)  As part of the sale process, Evercore and Wolfson solicited interest from potential buyers and reached out to 98 entities to elicit their interest in purchasing GMS.  (*Id.* ¶ 27.)  Ultimately, after an extensive bid process, one of those entities, Veritas, submitted a final offer to acquire GMS for $350 million, which GMS rejected.  (*Id.* ¶ 38.)

### C.  GMS Terminates the Engagement Letter.

On June 27, 2025, GMS terminated the Engagement Letter, alleging that Defendants had interfered with the sale process to suppress competition in favor of Veritas by, among other things: providing unauthorized pricing representations to other potential buyers (*id.* ¶ 40), failing to explain to GMS why other bidders had dropped out of the sale process (*id.* ¶ 42), actively strategizing with Veritas on how to eliminate other competition from the bidding process (*id.* ¶ 43), failing to disclose to GMS its financial relationships or business connections with Veritas (*id.* ¶¶ 44-45), and failing to contact qualified potential buyers.  (*Id.* ¶ 46.)

On July 3, 2025, Evercore responded to GMS's notice, emphatically stating that all of these allegations were false, acknowledging the termination, noting that the Tail Provision survived termination, and requesting payment for its expenses totaling $259,185.23. (*Id.* ¶¶ 50-51.) With this response, Evercore also sent GMS a list of the 98 potential buyers it had reached out to in connection with its engagement. (*See id.* ¶¶ 27, 51.) GMS denied that the Tail Provision applied to these potential buyers and refused to pay the expenses it owed Evercore.[4] (*See id.* ¶¶ 52-53.)

## D. GMS Files Suit.

Despite the Engagement Letter's forum-selection clause specifying New York, on August 27, 2025, GMS filed this lawsuit in California Superior Court against Evercore, Wolfson, and 25 Does. On September 10, 2025, Defendants removed this action to the Central District of California on the basis of diversity. On November 3, the Central District of California transferred the action to this Court pursuant to the forum-selection clause, expressly rejecting Plaintiff's attempt to characterize the clause as permissive rather than mandatory. (ECF No. 25 ("Plaintiff does not cite to a single case holding that the phrase 'irrevocably consent to the exclusive jurisdiction' or even the smaller phrase 'exclusive jurisdiction' does not make out what the plain language says: a mandatory forum selection clause.").)

---

[4] Defendants reserve all rights to bring suit against GMS for these unpaid expenses and for any other claims arising under or relating to the Engagement Letter. As courts in this Circuit recognize, where "the procedural stage at which [a defendant] would be required to file an answer was never reached, and therefore the occasion never arose for it to bring any counterclaims," a defendant "is not barred from raising" compulsory counterclaims in a later proceeding. *Mut. Fire, Marine & Inland Ins. Co.* v. *Adler*, 726 F. Supp. 478, 482 (S.D.N.Y. 1989).

On December 3—forced by a Rule 11 letter sent by Defendants on November 5—GMS amended its complaint.  (*See* ECF No. 32.)  The parties exchanged letters about Defendants' planned motion to dismiss the First Amended Complaint.  (*See* ECF Nos. 33-34.)  Defendants sent GMS another Rule 11 letter on December 15 and the Court granted GMS's request to amend its complaint yet again on December 17.  (*See* ECF No. 35.)  GMS filed a Second Amended Complaint on January 20, 2026.  (*See* SAC.)

As a result of Defendants' two Rule 11 letters, GMS was forced to withdraw several allegations, and acknowledge that Defendants (i) disclosed their relationship with Veritas to GMS (Ex. 2 at ¶¶ 14-16, 45), (ii) kept GMS updated on the status of the sale process (*id.* at ¶¶ 33-34), and (iii) staffed its transaction team with multiple senior and experienced investment bankers.  (*Id.* at ¶¶ 26, 81.)

## STANDARD ON THIS MOTION

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  Courts are not required to accept as true legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."  *Id.*  Although the court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the plaintiff, *see ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), the plaintiff must assert "more than labels and conclusions [] and a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555.  Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.*

**ARGUMENT**

**I.      GMS'S BREACH OF FIDUCIARY DUTY CLAIM IS CONTRARY TO THE ENGAGEMENT LETTER AND DUPLICATIVE OF ITS BREACH OF CONTRACT CLAIM.**

**A.  Evercore and Wolfson Did Not Owe Fiduciary Duties to GMS.**

To establish a breach of the duty, the plaintiff must first allege "a fiduciary duty existed between plaintiff and defendant." *In re 22 Fiske Place, LLC*, 2022 WL 2819093, at *14 (S.D.N.Y. July 18, 2022) (Failla, J.).  Where a contract unambiguously disclaims any fiduciary duties, courts in this Circuit routinely dismiss such claims.  *See, e.g.*, *Summit Props. Int'l, LLC* v. *Ladies Pro. Golf Ass'n*, 2010 WL 2382405, at *7 (S.D.N.Y. June 14, 2010) (collecting cases).  GMS ignores the Engagement Letter's unambiguous language, which explicitly disclaims any fiduciary responsibilities owed to GMS.  (Ex. 1 at 4 ("Evercore is not acting . . . in a fiduciary capacity with respect to the Company.").)

Even assuming this disclaimer did not control, Evercore and Wolfson were never fiduciaries to GMS because "under New York law, financial advisers are fiduciaries of their clients, whereas investment bankers are not."  *TPTCC NY, Inc.* v. *Radiation Therapy Servs., Inc.*, 784 F. Supp. 2d 485, 505 (S.D.N.Y. 2011), *rev'd and remanded on other grounds*, 453 F. App'x 105 (2d Cir. 2011).  This follows from basic principles of what creates a fiduciary relationship under New York law.

Where parties engage in an arms-length transaction, there is no fiduciary relationship in the absence of special circumstances.  *In re Mid-Island Hosp., Inc.,* 276 F.3d 123, 130 (2d Cir. 2002).  GMS pleads that the relationship between Defendants and GMS was not at arms-length because "Defendants' compensation was directly tied to the advice they provided GMS." (SAC ¶ 64.)  But this compensation structure is routine in service industries, and could

apply to any engagement letter signed by investment bankers, lawyers, real estate brokers, and recruiters. It does not automatically establish that a transaction is not at arms-length. The hallmark of an arms-length transaction is that it involves parties "who are not related or not on close terms and who are presumed to have roughly equal bargaining power." Arm's-Length, Black's Law Dictionary (12th ed. 2024). GMS has not pleaded that it and Evercore were on close terms or did not have equal bargaining power. It only pleads that it engaged Evercore upon the recommendation of Evans. (SAC ¶ 19.) Indeed "there is no basis for inferring that the trust and confidence plaintiff reposed in defendants was anything more than the type parties normally seek before entering an arms-length transaction." *Rogers* v. *HSN Direct Joint Venture*, 1998 WL 566804, at *3 (S.D.N.Y. Sept. 4, 1998).

Furthermore, GMS fails to plead the extraordinary circumstances that could give rise to fiduciary duties even in an arms-length transaction. GMS's allegation that Defendants had "superior knowledge and control over the sale process," (SAC ¶ 57) cannot, by itself, give rise to a fiduciary duty claim. *See, e.g.*, *M&T Bank Corp.* v. *Gemstone CDO VII, Ltd.*, 891 N.Y.S.2d 578, 581 (N.Y. App. Div. 2009) ("[A] party's 'unique or special expertise' alone is insufficient to create an issue of fact concerning the existence of a special relationship."). GMS also alleges that it entrusted Defendants with "sensitive and proprietary information," (SAC ¶ 61) to effectuate a potential sale and that Defendants occupied a place of "special trust and confidence" because they managed the negotiations with potential bidders. (SAC ¶ 62.) But "the mere communication of confidential information [is not] sufficient in and of itself to create a fiduciary relationship." *Wiener* v. *Lazard Freres & Co.*, 672 N.Y.S.2d 8, 14 (N.Y. App. Div. 1998). Evercore was hired to provide GMS with financial advisory services; any confidential information it received was in connection with the performance of those

-10-

services.   And it did perform those services by negotiating with potential buyers, as is standard in the investment banking industry.

Where there is no allegation that the parties "had a long-standing relationship" that did not spring from the contract, no extraordinary circumstances exist and a claim for breach of fiduciary duty fails. *Ellington Credit Fund, Ltd.* v. *Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 194 (S.D.N.Y. 2011).   GMS does not allege that it had *any* relationship with Defendants, let alone a "long-standing" one, prior to signing the Engagement Letter.   There are no extraordinary circumstances that can support GMS's conclusory allegation that Defendants occupied a position of "confidence and trust" (SAC ¶ 57) and justify the imposition of a fiduciary duty.

Nor is there anything particular about the nature of Evercore's business as an investment bank that could cause it to take on the role of a fiduciary.   Unlike traditional financial advisors who advise their clients on security investments, banks like Evercore hired solely to oversee a sell-side process or locate financing for their clients are not fiduciaries. *TPTCC*, 784 F. Supp. 2d at 505; *see also Boccardi Cap. Sys., Inc.* v. *D.E. Shaw Laminar Portfolios, L.L.C.*, 355 F. App'x 516, 519 (2d Cir. 2009).   In similar circumstances, courts routinely find that investment banks do not act as fiduciaries to their clients.   *See, e.g.*, *TPTCC*, 784 F. Supp. 2d at 505; *Boccardi Cap. Sys. Inc.*, 355 F. App'x at 516; *KSFB Mgmt. LLC*, v. *Focus Fin. Partners, LLC*, 225 N.Y.S.3d 606, at *13 (N.Y. Sup. Ct. Jan. 22, 2025); *Robin Bay Assocs., LLC* v. *Merrill Lynch & Co.*, 2008 WL 2275902, at *4 (S.D.N.Y. June 3, 2008).

GMS's breach of fiduciary claim against Wolfson fails for the same reason.   "[T]hat one businessman trusts another, and relies upon his promise to perform a contract, does not give rise to a confidential relationship." *Maalouf* v. *Salomon Smith Barney, Inc.*, 2003 WL 1858153,

-11-

at *5 (S.D.N.Y. April 10, 2003).  GMS fails to plead any relationship with Wolfson separate from his role as an Evercore employee who worked on GMS's sale process.  He acted solely as an investment banker, and was never a fiduciary to GMS.

### B.  GMS's Claim Is Duplicative of Its Breach of Contract Claim.

Count One is also duplicative of the breach of contract claim against Evercore in Count Two.  "Where a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract." *Alitalia Linee Aeree Italiane, S.p.A.* v. *Airline Tariff Publ'g Co.*, 580 F. Supp. 2d 285, 294 (S.D.N.Y. 2008).

In its breach of fiduciary duty claim, GMS alleges that Evercore interfered with the sale process by favoring Veritas over other potential buyers and not providing adequate services.  (SAC ¶ 65.)  But GMS's breach of contract claim is also premised on this same allegation—that "Evercore materially breached the Engagement Agreement by failing to conduct a proper sale process designed to maximize value for GMS."  (*Id.* ¶ 73.)  Where such claims are "premised upon the same facts," courts dismiss the fiduciary duty claim as duplicative.  *See, e.g.*, *N. Shipping Funds I, LLC* v. *Icon Cap. Corp.*, 921 F. Supp. 2d 94, 106 (S.D.N.Y. 2013).  Because GMS does not allege that Evercore owed GMS fiduciary duties separate from any that could have stemmed from the Engagement Letter, and because the allegations supporting this claim are the same as those that support GMS's contract claim, this claim is duplicative and should be dismissed.

### II.  GMS FAILS TO PLEAD THAT EVERCORE BREACHED THE LETTER.

In its contract claim, GMS alleges only that "Evercore materially breached the Engagement Agreement by failing to conduct a proper sale process designed to maximize

value for GMS." (SAC ¶ 73.) But the Engagement Letter says nothing about "maximizing value"; rather, it obligates Evercore to "provide financial advisory services as customarily may be provided by Evercore in connection with engagements of this type." (Ex. 1 at 1.) And as GMS acknowledges, Evercore *did* provide those services: Evercore prepared a letter and sales book and reached out to 98 potential buyers, of which 50 executed NDAs to receive additional information from GMS. (SAC ¶¶ 26-28.) Because of Evercore's continued efforts, 11 parties submitted initial non-binding offers, and eventually one party (Veritas) made an offer. (*Id.* ¶¶ 28, 38.) Evercore fulfilled its duties under the agreement, and GMS's displeasure with the valuation of the offer it received is not a basis for a breach of contract claim.

"A contract that calls for the performance of services requires only that the obligated party perform in a [sic] objectively reasonable manner under the circumstances. Infallibility is not to be expected." *Pierson* v. *Willets Point Contracting Corp.*, 899 F. Supp. 1033, 1049 (E.D.N.Y. 1995). Evercore's actions in conducting the sale process, by preparing materials for potential buyers, reaching out to those buyers, eliciting multiple non-binding offers, and one final offer, were "objectively reasonable." *Id.* GMS acknowledges these extensive efforts, pleading that "Evercore provided comprehensive financial advisory services including identifying and screening potential buyers, coordinating due diligence, evaluating proposals, and structuring and negotiating financial aspects of any transaction." (SAC ¶ 21.)

Moreover, save one exception, the conduct that GMS pleads in the Second Amended Complaint—including all of its contentions that Defendants had an improper relationship with Veritas and steered the sale to Veritas—is predicated solely on GMS's "inform[ation] and belie[f]"—*i.e.*, rank speculation—rather than factual allegations. (SAC ¶¶ 16-18, 35, 40, 41, 43-44, 46-47.) Such pleadings are only acceptable "where the facts are peculiarly within the

-13-

possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Recs., LLC* v. *Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). In such cases, courts in this Circuit require either an explanation of why the facts are only within the defendants' possession or control, or a "'statement of the facts upon which the belief is founded.'" *Munoz-Nagel* v. *Guess, Inc.*, 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013). GMS pleads no such explanation or factual information that would "render these statements any more than a speculative claim." *Williams* v. *Calderoni*, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012).

And GMS's sole allegation grounded in some level of fact—that Evercore made an unauthorized pricing representation to a "Company A" (SAC ¶ 40)—still does not meet Rule 8's requirements. Where a pleading does not disclose the identity of an entity or individual crucial to a breach of contract claim, that claim "lack[s] the level of specificity required by Rules 8(a)(2) and 12(b)(6)." *Warren* v. *John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 625 (S.D.N.Y. 2013). GMS provides no details on Company A's identity, which Evercore employee made this statement, or even when or where it was made. GMS cites "confidentiality reasons" to avoid disclosing "Company A's" identity (SAC ¶ 40 n.1), but such an assertion "does not make clear whether plaintiff[] lack[s] actual knowledge of the bidder's name, or [is] simply unwilling to provide it." *Bilinski* v. *Keith Haring Found.*, 632 F. App'x 637, 642 (2d Cir. 2015). These "unnamed, unsubstantiated" statements "do not meet the threshold level of facial plausibility" required by Rule 8. *Shannon* v. *Goon*, 2013 WL 160274, at *2 (N.D.N.Y. Jan. 15, 2013).

GMS's allegation that Wolfson was less involved with the transaction than previously represented and that the Evercore team consisted primarily of junior advisors is foreclosed

-14-

by the Engagement Letter.  The agreement makes no promises as to who would be staffed on the engagement, their levels of seniority, or degree of involvement.  Nor does GMS explain how or why a staffing change of the kind it describes would breach the Engagement Letter.

### III.    GMS'S BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM IS DUPLICATIVE AND DEFICIENT.

GMS's claim that Evercore breached the Engagement Letter's implied covenant of good faith and fair dealing boils down to two theories: first, that Evercore conducted an improper sale process (SAC ¶¶ 80-83), and second, that Evercore subsequently sought to enforce the Tail Provision after the agreement was terminated.  (SAC ¶ 80.)  The first reason is duplicative of GMS's contract claim in Count Two, and in any event, neither reason is adequately pleaded.

### A.    GMS's Claim Is Duplicative of Its Breach of Contract Claim.

Under New York law, courts will dismiss an implied covenant claim where it is based on the same facts as a breach of contract claim.  *JN Contemp. Art LLC* v. *Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022).  The implied covenant claim rests in major part on GMS's allegation that Evercore failed to conduct a proper sale process and thus "frustrated the fundamental purpose of the Engagement Agreement, which was to maximize value for GMS through a competitive sale process."  (SAC ¶ 83.)  As explained *supra* at 13, this was not the fundamental purpose of the Engagement Letter, which required Evercore to run a sale process, which it did.  But to support this claim, GMS pleads that Evercore (i) suppressed competition and steered the sale to Veritas, (ii) did not provide GMS with sufficient explanations for why bidders dropped out of the sale process, and (iii) did not adequately staff its transaction team.  GMS's contract claim is also based on its contention that Evercore "fail[ed] to conduct a proper sale process designed to maximize value for GMS."  (SAC ¶ 73.)

GMS does not specify any other facts in support of its contract claim.  The allegations underpinning its implied covenant claim are also the only theories of liability pleaded in the Second Amended Complaint as a whole.  These same allegations must thus also form the basis for GMS's breach of contract claim.  Since both claims rest on the same factual allegations, GMS's implied covenant claim is duplicative.

### B.    GMS Fails to Plead a Breach of the Implied Covenant.

GMS claims Evercore interfered in the sale process by staffing its team with inexperienced junior advisors and by undermining other potential buyers to benefit Veritas. It states that these actions were in bad faith and constitute a breach of the implied covenant. (SAC ¶¶ 80-81.)  But an implied covenant claim requires pleading "facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff."  *Aventine Inv. Mgmt.* v. *Can. Imperial Bank of Com.*, 265 A.D.2d 513, 514 (N.Y. App. Div. 1999).  Under the agreement, GMS was entitled to receive, in connection with its possible sale, "financial advisory services as customarily may be provided by Evercore." (Ex. 1 at 1.)  GMS has failed to show how the conduct it alleges deprived it of these benefits, particularly given that GMS acknowledged that Evercore could not "guarantee the closing of the Transaction or the Company's achievement of the strategic or financial goals underlying the Transaction."  (*Id.* at 4.)

And allegations of "[b]ad faith conduct [are] not considered in a vacuum, but rather, in the context of the parties' intentions and expectations, as memorialized in the contract." *In Touch Concepts, Inc.* v. *Cellco P'ship*, 949 F. Supp. 2d 447, 472 (S.D.N.Y. 2013).  GMS fails to tie its allegations to the agreement, beyond stating, in conclusory fashion, that Evercore's conduct "frustrated the fundamental purpose of the Engagement Agreement, which was to

maximize value for GMS through a competitive sale process." (SAC ¶ 83.) To the contrary, GMS goes into extensive detail explaining the work Evercore did on behalf of GMS in the sale process. (*See* SAC ¶¶ 21, 27-28; *see also supra* at 13-14.)

GMS's allegation that Evercore's reminder to GMS of the Tail Provision's enforceability breached the implied covenant is patently wrong. "[N]o obligation may be implied that would be inconsistent with other terms of the contractual relationship." *1357 Tarrytown Rd. Auto, LLC* v. *Granite Props., LLC*, 142 A.D.3d 976, 977 (N.Y. App. Div. 2016). The agreement contains an unambiguous Tail Provision under which Evercore is entitled to a success fee if GMS enters into an acquisition during "the 9 months following termination of this Agreement." (Ex. 1 at 4.) Evercore did not have any obligation to waive its right to enforce the Tail Provision. Its reminder to GMS was fully consistent with the Engagement Letter.

GMS alleges that Evercore breached the implied covenant because it staffed its transaction team with primarily junior advisors and because Wolfson was less involved on the deal than they had expected. (SAC ¶ 81.) But GMS fails to explain how such actions, even if true, deprived it of the benefits it was due under the agreement. And GMS does not plead, as required to claim breach of the implied covenant, that Evercore made "any promises which a reasonable person [in GMS's position] would be justified in understanding were included" as to Wolfson's—or any other Evercore employee's—involvement in the transaction. *511 West 232nd Owners Corp.* v. *Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002). No reasonable person would have understood Wolfson's alleged representations to GMS that he would lead the sale process if GMS hired Evercore to be a guarantee as to the exact role or amount of time he would devote.

IV.     **GMS'S PROFESSIONAL NEGLIGENCE CLAIM IS DUPLICATIVE, DEFICIENT, AND BARRED BY THE ECONOMIC LOSS DOCTRINE.**

GMS alleges that Defendants owed GMS a professional duty of care "according to the standard of care applicable to investment bankers in similar circumstances," and that Defendants breached this duty by interfering with the sale process.  (SAC ¶¶ 86-87.)  But because GMS's professional negligence claim against Evercore arises out of the Engagement Letter, that claim is duplicative of the breach of contract claim.  In any event, Defendants did not owe GMS a professional duty of care.  Moreover, the damages it seeks are prohibited under the economic loss rule.

A.      **GMS's Claim Against Evercore is Duplicative of Its Breach of Contract Claim.**

GMS's professional negligence claim as to Evercore sounds in contract and is duplicative of its contract claim.  Both claims are based on alleged duties that "stem directly from the parties' agreement[]."  *Maspeth Fed. Sav. & Loan Ass'n* v. *Fidelity Info. Servs. LLC*, 275 F. Supp. 3d 411, 418 (E.D.N.Y. 2017).  Under New York law, a breach of contract cannot give rise to a tort claim "unless a legal duty independent of the contract itself has been violated." *Bayerische Landesbank N.Y. Branch* v. *Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012). GMS failed to properly allege any legal duties owed by Evercore independent of the Engagement Letter.  But yet it seeks, in this claim, to "obtain the benefit of its contractual agreement" through a tort cause of action.  *Id.*  Courts dismiss such claims as duplicative. *Maspeth*, 275 F. Supp. 3d at 418.

B.      **The Engagement Letter Bars Liability for Professional Negligence.**

Under New York law, exculpation clauses are enforceable where the language "expresses in unequivocal terms the intention of the parties to relieve a defendant of liability

for its own negligence." *Sjogren* v. *Bd. of Trs. of Dutchess Cmty. Coll.*, 216 A.D.3d 836, 837 (N.Y. App. Div. 2023).  The Engagement Letter contains an unambiguous exculpation clause that provides that neither Evercore or Wolfson "shall have any liability (whether in contract, tort or otherwise) to" GMS unless they are found to have acted with "gross negligence, bad faith or willful misconduct."  (Ex. 1 at 8-9.)  This language "expressly applies to direct actions" between GMS and Defendants.  *Reynolds* v. *Behreman Bros. Mgmt. Corp.*, 2020 WL 1957372, at *4 (S.D.N.Y. Apr. 23, 2020).  GMS's professional negligence claim, which does not allege gross negligence, bad faith or willful misconduct, is thus barred.  *See, e.g.*, *Ivison* v. *Extend Fertility, LLC*, 2024 WL 1795411, at *3 (S.D.N.Y. Apr. 25, 2024).

**C.    Evercore and Wolfson Did Not Owe GMS a Professional Duty of Care.**

New York tort law makes clear that investment banks cannot be held liable on a professional negligence theory.  "The New York Court of Appeals has never found financial institutions such as investment banks to be professionals for these purposes." *Deutsche Bank Secs., Inc.* v. *Rhodes*, 578 F. Supp. 2d 652, 670 (S.D.N.Y. 2008).  An investment bank hired solely to arrange for the sale of a company (as Defendants were hired by GMS) does not owe its client any duties apart from the terms of the contract.  *See id.* ("[I]n actions involving the contractual duties of corporations and financial institutions, a negligence action may not be maintained and parties must proceed under a contract theory.").  Since Defendants did not owe GMS a professional duty of care, they cannot be held liable on a professional negligence claim.

**D.    The Economic Loss Doctrine Prohibits GMS's Claim.**

GMS seeks wide-ranging damages for Defendants' alleged failure to meet the standard of care applicable to investment banks.  (SAC ¶ 89.)  But under New York law, "[p]laintiffs

who enter into transactions that are of a contractual nature . . . are limited to 'the benefits of their bargains' unless they can show 'a legal duty separate and apart from obligations bargained for and subsumed within the transaction.'" *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 185 (S.D.N.Y. 2014).  Courts in this Circuit thus apply the economic loss doctrine where a claim "sound[s] in contract, not tort." *Id.*  GMS's negligence claim rests solely on its contentions that Defendants owed GMS a professional duty of care because they agreed to provide GMS with investment banking services.  (SAC ¶ 86.)  The economic loss doctrine thus applies.

That rule prohibits recovery for economic losses under negligence theories "unless there exists 'a special relationship that requires the defendant to protect against the risk of harm to plaintiff.'" *Cruz* v. *TD Bank N.A.*, 855 F. Supp. 2d 157, 178 (S.D.N.Y. 2012).  Under this rule, plaintiffs may only recover if they have suffered "personal or property injury," which GMS does not plead.  *EED Holdings* v. *Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 277 (S.D.N.Y. 2004).

Instead, the "'economic loss' contemplated by the rule would generally encompass types of injuries and resulting damages that embody future financial harms—as for example, potential lost profits, business opportunities, and earnings from a transaction." *Sofi Classic S.A. de C.V.* v. *Hurowitz*, 444 F. Supp. 2d 231, 246 n.7 (S.D.N.Y. 2006).  The rule also applies when a party seeks "to be returned to the point at which the breach arose and to be placed in as good a position as it would have had" there been no breach.  *Hotel 57 L.L.C.* v. *Integral Contracting, Inc.*, 2023 WL 6390529, at *4 (S.D.N.Y. Oct. 2, 2023).  These are precisely the types of damages that GMS seeks to recover.  (SAC ¶ 89.)  Since GMS has not pleaded that

there is any "special relationship" between either of Defendants and GMS, its recovery of these damages is barred.

## V.    GMS'S INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE CLAIM IS DEFICIENT.

An intentional interference with prospective economic advantage claim requires showing "that defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means." *Lombard* v. *Econ. Dev. Admin. of Puerto Rico/Puerto Rico Indus. Dev.*, 2000 WL 347177, at *1 (S.D.N.Y. 2000).

GMS alleges that Defendants acted "wrongful[ly] and fraudulent[ly]" by intentionally interfering with its "prospective economic relationships with various potential buyers . . . who expressed interest in acquiring GMS" by "discouraging potential buyers, providing misleading information, and steering the process away from competitive bidding." (SAC ¶¶ 92-94.)  This claim is thus predicated on a fraud theory, and as such, must meet Rule 9's heightened pleading requirements.  Fed. R. Civ. P. 9(b).  To meet these requirements, "a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas* v. *Hassett*, 886 F.2d 8, 11 (2d Cir. 1988).

Apart from one instance in which GMS alleges Evercore made an unauthorized pricing representation to a potential buyer (an entity that GMS does not even identify) (SAC ¶ 40), GMS points to no concrete examples in which Defendants discouraged potential buyers from bidding on GMS.  It entirely fails to allege the substance of these statements, let alone how, when, where, and to whom these statements were made.  It instead makes vague assertions of fraudulent conduct, based solely on its information and belief.  (*See, e.g.*, SAC ¶¶ 35, 40, 41,

-21-

43, 44, 46.) Such allegations do not meet Rule 9's requirements. "Allegations of fraud based on information and belief generally do not satisfy Rule 9(b), except for matters that are 'peculiarly within the opposing party's knowledge,' in which case Rule 9(b) permits information and belief allegations so long as they are 'accompanied by a statement of facts upon which the belief is founded.'" *ATSI Comm'cns Inc.* v. *Shaar Fund, Ltd.*, 2004 WL 616123, at n.1 (S.D.N.Y. Mar. 30, 2004). GMS does not offer any such statement of facts.

Even if this Court applies Rule 8's more liberal pleading standard, GMS's claim still fails because GMS does not plead that Defendants intentionally interfered with its prospective economic relationships with any level of specificity. It "fails to identify any specific business relationship that was harmed by [Defendants'] alleged actions." *Access Nursing Servs.* v. *St. Consulting Grp.*, 137 A.D. 3d 678, 679 (N.Y. App. Div. 2016) (dismissing claims for tortious interference and intentional interference with business relations where plaintiff did not identify the specific relationship). Barring one sentence (SAC ¶ 40), the complaint "contains no factual allegations describing the substance of the alleged" tortious acts such as "where, when, or to whom they were made." *Fifth St. Fin. Corp.* v. *Toll*, 2013 WL 3757037, at *4 (S.D.N.Y. July 17, 2013). And as to GMS's sole factual allegation that Evercore made an unauthorized pricing representation (SAC ¶ 40), GMS does not identify the counterparty to whom this statement was allegedly made, nor when or where that statement was made. (*See supra* at 14-15.) Without these details, allegations of intentional interference are too vague and insufficient to meet Rule 8's standard. *See, e.g.*, *Toll*, 2013 WL 3757037, at *4-5.

-22-

## VI.    GMS'S COMMON LAW UNFAIR COMPETITION CLAIM IS DEFICIENT.

GMS's claim that Defendants engaged in common law unfair competition is entirely without merit.  "The standard of unfair competition under New York law is a virtual cognate of the federal Lanham Act and is predicated on the theory of the misappropriation of a claimant's commercial goodwill." *CDC Newburgh, Inc.* v. *STM Bags, LLC*, 692 F. Supp. 3d 205, 225 (S.D.N.Y. 2023).  "New York law recognize[s] two theories of common-law unfair competition: palming [or passing] off and misappropriation." *Id.* at 225*.*  The first theory involves alleging that Defendants "copied" GMS's products or "substituted" their products for GMS's products. *Id.* at 226.  The second theory requires a showing that the "consuming public will be confused about the source of the allegedly infringing product [or service]." *Id.* at 225-26.

This claim bears no relevance to GMS's allegations.  GMS does not allege that Defendants have sought to pass off their products or services to the public as belonging to GMS.  As GMS acknowledges, it is a computing manufacturer, and Evercore and Wolfson are, respectively, an investment bank and investment banker.  (SAC ¶¶ 3-5.)  Defendants operate in an entirely different industry from GMS.  There is no likelihood that the public could possibly confuse GMS and its computing products with Defendants and their financial advisory services.

## VII.    GMS FAILS TO ADEQUATELY PLEAD NEGLIGENT MISREPRESENTATION.

GMS's negligent misrepresentation claim hinges on a single statement it claims that Wolfson made to GMS:  that if GMS hired Evercore, he would "be the primary negotiator in the sales process, would be involved in all aspects of the sales process, and would endeavor to obtain the most profitable result for GMS."  (SAC ¶ 105.)  This statement is not actionable.

As an initial matter, it is foreclosed by the Engagement Letter's merger clause, confirming that the agreement "supersedes all prior agreements and understandings." (Ex. 1 at 5.) Though Wolfson is not a signatory to the Engagement Letter, its merger clause still precludes a negligent misrepresentation claim. *See, e.g.*, *McBeth* v. *Porges*, 171 F. Supp.3d 216, 225-26 (S.D.N.Y. 2016) (dismissing negligent misrepresentation claim against individual defendants where the contract plaintiff signed with corporate entities contained a merger clause).

As the Second Circuit explained, "the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." *Hydro Invs., Inc.* v. *Trafalgar Power Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000). The alleged misrepresentation that GMS relies on is forward-looking: Wolfson allegedly made this statement to GMS before Evercore was hired, and any suggestion as to the terms of that engagement would have necessarily been promissory. It is "mere puffery, opinions of value or future expectations." *Sheth* v. *N.Y. Life Ins. Co.*, 273 A.D.2d 72, 74 (N.Y. App. Div. 2000). Such statements are not factual and must be dismissed.

Moreover, under New York law, negligent misrepresentation occurs when "the defendant had a duty, as a result of a special relationship, to give correct information." *Hydro Invs., Inc.*, 227 F.3d at 20. While several factors determine whether a special relationship exists, "under the most lenient standard," this requirement can be overcome if "the plaintiff 'emphatically alleges' that the defendant held a unique or special expertise, and that the defendant provided information knowing how that information would be used by the plaintiff." *Alley Sports Bar, LLC* v. *SimplexGrinnell, LP*, 58 F. Supp. 3d 280, 292 (W.D.N.Y. 2014). GMS does not meet even this low bar—it only pleads that Wolfson "advertise[d] himself as

-24-

having unique, specialized knowledge in the industry." (SAC ¶ 103.) But one paragraph containing a conclusory allegation does not establish a special relationship. *See, e.g.*, *Twohig* v. *Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 167 (S.D.N.Y. 2021) ("[Plaintiffs] simply refer to one paragraph in their 151-paragraph complaint where they allege – in a conclusory manner – that Defendant 'held itself out as having special knowledge and experience in the production, service and/or sale of the product type.'"). Because, even under the most generous test, GMS fails to plead that Wolfson had a special relationship with GMS, this claim fails.

## VIII.    GMS'S DECLARATORY JUDGMENT CLAIM IS DEFICIENT.

GMS requests a declaration that "the Tail Provision is unenforceable and that GMS may pursue transactions with any and all potential buyers without obligation to pay success fees to Evercore." (SAC ¶ 117.) It claims that Defendants' alleged misconduct "render[s] the Tail Provision unenforceable as a matter of law and equity" (SAC ¶ 115), or that in the alternative, "enforcement of the Tail Provision under these circumstances would be unconscionable and contrary to public policy." (SAC ¶ 116.) Neither reason is sufficient to warrant declaratory relief.

A request for a declaratory judgment requires pleading a "specific live grievance" and not a "hypothetical state of facts." *Conf. Mgmt. Corp.* v. *BMT Publ'ns, Inc.*, 1991 WL 41637, at *3 (S.D.N.Y. Mar. 18, 1991); *see also Golden* v. *Zwickler*, 394 U.S. 103 (1969). GMS does not identify any potential buyer who is willing to acquire it and possibly trigger the Tail Provision, and thus there is no "specific live grievance." *Golden*, 394 U.S. at 110. Its allegation that Defendants have threatened to enforce the Tail Provision is insufficient to meet this standard because it has not pleaded that there is any particular transaction that it could enter

-25-

that would be captured by the Tail Provision. And the instant dispute between the parties cannot, by itself, constitute a specific live grievance because, as pleaded, there is no "real and substantial prospect" that GMS's legal rights with respect to the Tail Provision would be impacted. *Velvet Underground* v. *Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 405-06 (S.D.N.Y. 2012).

In any case, GMS's allegation that enforcement of the Tail Provision would be unconscionable and contrary to public policy is without merit. To the contrary, "[t]ail provisions in investment banking contracts are common and are generally enforceable." *GCA Advisors, LLC* v. *Intersections, Inc.*, 230 A.D.3d 975, 975 (N.Y. App. Div. 2024). There is no public policy under New York law that would require the Tail Provision to be rendered unenforceable under these circumstances.

Moreover, if this Court dismisses GMS's other claims, this claim should also be dismissed as a matter of law. It is well-settled that the Declaratory Judgment Act "provides a federal remedy, but does not provide any basis for a federal claim in cases in which there is no independent basis for exercising federal subject matter jurisdiction." *Geller Biopharm, Inc.* v. *Amunix Pharms., Inc.*, 2021 WL 4155015, at *11 (S.D.N.Y. Sept. 13, 2021); *see also* 28 U.S.C. § 2201. This suit is before this Court on the basis of diversity jurisdiction, which requires an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). This Court does not have jurisdiction to adjudicate this claim, standing alone, which seeks only a judicial declaration but not any damages.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint should be granted.

-26-

-27-

Dated:  February 13, 2026                    Respectfully submitted,


                                             */s/ Matthew A. Schwartz*
                                             Matthew A. Schwartz
                                             Aneesa Mazumdar
                                             SULLIVAN & CROMWELL LLP
                                             125 Broad Street
                                             New York, NY 10004
                                             Telephone:  (212) 558-4000
                                             Facsimile:  (212) 558-3588
                                             schwartzmatthew@sullcrom.com
                                             mazumdara@sullcrom.com

                                             *Attorneys for Defendants Evercore Group L.L.C.*
                                             *and Ira Wolfson*

-28-

## CERTIFICATE OF COMPLIANCE

I, Matthew A. Schwartz, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) and Rule 4(B) of this Court's Individual Rules of Practices in Civil Cases that the foregoing Memorandum of Law was prepared using Microsoft Word and contains 7,848 words.

Dated:  February 13, 2026                    */s/ Matthew A. Schwartz*
                                            Matthew A. Schwartz