## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

GENERAL MICRO SYSTEMS, INC.,

    *Plaintiff*,

  v.

EVERCORE GROUP L.L.C., IRA
WOLFSON, and DOES 1-25,

    *Defendants.*

Case No. 1:25-cv-09157-KPF

Hon. Katherine P. Failla

## REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Matthew A. Schwartz
Aneesa Mazumdar
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
schwartzmatthew@sullcrom.com
mazumdara@sullcrom.com

*Attorneys for Defendants*
*Evercore Group L.L.C.*
*and Ira Wolfson*

March 27, 2026

## TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ...........................................................................................................1

**ARGUMENT** .......................................................................................................................................1

**I.** **GMS'S FIDUCIARY DUTY CLAIM FAILS FOR SEVERAL INDEPENDENT
REASONS** ................................................................................................................................1

    A.    GMS Ignores the Fiduciary Disclaimer ....................................................................1

    B.    In Any Event, Defendants Did Not Owe Extracontractual Fiduciary
Duties .............................................................................................................................2

    C.    GMS's Fiduciary and Contract Claims Are Still Duplicative ...................................4

**II.** **GMS FAILS TO PLEAD A BREACH OF CONTRACT** .................................................5

**III.** **GMS'S BREACH OF THE IMPLIED COVENANT IS DUPLICATIVE AND
DEFICIENT** ............................................................................................................................7

    A.    GMS's Claim Is Duplicative of Its Contract Claim....................................................7

    B.    GMS Fails to Plead a Breach of the Implied Covenant ............................................7

**IV.** **GMS'S PROFESSIONAL NEGLIGENCE CLAIM IS DEFICIENT** ............................9

**V.** **GMS FAILS TO PLEAD INTENTIONAL INTERFERENCE WITH
PROSPECTIVE ECONOMIC ADVANTAGE**.................................................................10

**VI.** **GMS'S UNFAIR COMPETITION CLAIM IS DEFICIENT** .......................................10

**VII.** **GMS FAILS TO PLEAD WOLFSON NEGLIGENTLY MISREPRESENTED HIS
INVOLVEMENT**...................................................................................................................11

**VIII.** **GMS'S DECLARATORY JUDGMENT CLAIM IS DEFICIENT** .............................12

**CONCLUSION**..................................................................................................................................13

**TABLE OF AUTHORITIES**

*Page(s)*

**Cases**

*Apple Recs., Inc.* v. *Capitol Recs., Inc.*,
137 A.D.2d 50 (N.Y. App. Div. 1988)............................................................................................1, 2

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ....................................................................................................11

*Bayerische*, *New York Branch* v. *Aladdin Cap. Mgmt. LLC*,
692 F.3d 42 (2d Cir. 2012) .................................................................................................... 9

*BNP Paribas Mortg. Corp.* v. *Bank of Am. N.A.*,
949 F. Supp. 2d 486 (S.D.N.Y. 2013) ................................................................................ 9

*Century Pac., Inc.* v. *Hilton Hotels Corp.*,
2004 WL 868211 (S.D.N.Y. Apr. 21, 2004)......................................................................11

*Cnty. Waste & Recycling Serv., Inc.* v. *Twin Bridges Waste & Recycling, LLC*,
150 N.Y.S.3d 893 (N.Y. Sup. Ct. 2021) ...................................................................... 10, 11

*Cooper Dev. Co.* v. *Friedman*,
1994 WL 172401 (S.D.N.Y. May 4, 1994) ........................................................................ 3

*Eternity Glob. Master Fund Ltd.* v. *Morgan Guar. Tr. Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004)................................................................................................12

*Frydman & Co.* v. *Credit Suisse First Boston Corp.*,
272 A.D.2d 236 (N.Y. App. Div. 2000) ..........................................................................3, 4

*Greater New York Auto Dealers Ass'n* v. *Env't Sys. Testing, Inc.*,
211 F.R.D. 71 (E.D.N.Y. 2002) ...........................................................................................10

*JPMorgan Chase Bank, N.A.* v. *IDW Grp., LLC*,
2009 WL 321222 (S.D.N.Y. Feb. 9, 2009)........................................................................ 3

*Kaiser Aluminum Warrick, LLC* v. *US Magnesium, LLC*,
766 F. Supp. 3d 462, 473 (S.D.N.Y. 2025) ...................................................................... 4

*Kajoshaj* v. *NYC Dep't of Educ.*,
543 F. App'x 11, 15 (2d Cir. 2013) .................................................................................... 5

*M/A-COM Sec. Corp.* v. *Galesi*,
904 F.2d 134 (2d Cir. 1990)................................................................................................ 8

*Madeleine L.L.C.* v. *St.*,
757 F. Supp. 2d 403 (S.D.N.Y. 2010) ................................................................................... 5

*Mancini* v. *UBS AG, New York Branch*,
757 F. Supp. 3d 571 (S.D.N.Y. 2024) ...............................................................................7, 8

*McBeth* v. *Porges*,
171 F. Supp. 3d 216 (S.D.N.Y. 2016) ..................................................................................11

*NM Homes One, Inc.* v. *JP Morgan Chase Bank, N.A.*,
2011 WL 13267393 (S.D.N.Y. Mar. 10, 2011) .................................................................. 2

*Park Ok-Gu* v. *Distrokid, Inc.*,
2026 WL 621823 (S.D.N.Y. Mar. 4, 2026) ........................................................................ 6

*Polcom USA, LLC* v. *Affiliated FM Ins. Co.*,
551 F. Supp. 3d 290 (S.D.N.Y. 2021) ................................................................................ 7

*Rombach* v. *Chang*,
355 F.3d 162 (2d Cir. 2004)..................................................................................................10

*Saul* v. *Cahan*,
153 A.D.3d 947 (N.Y. App. Div. 2017) .............................................................................. 3

*Sergeants Benevolent Ass'n Annuity Fund* v. *Renck*,
19 A.D.3d 107 (N.Y. App. Div. 2005)................................................................................. 2

*Sky Coverage* v. *Alwex Inc.*,
194 A.D.3d 587 (N.Y. App. Div. 2021) .............................................................................. 9

*Smith* v. *Positive Prods.*,
419 F. Supp. 2d 437 (S.D.N.Y. 2005) ................................................................................ 4

*SNS Bank, N.V.* v. *Citibank, N.A.*,
7 A.D. 352 (N.Y. App. Div. 2004).........................................................................................8

*Suez Equity Invs., L.P.* v. *Toronto-Dominion Bank*,
250 F.3d 87 (2d Cir. 2001) ..................................................................................................12

*TIC Park Centre 9, LLC* v. *Wojnar*,
2017 WL 7733134 (E.D.N.Y. 2017).....................................................................................10

## Other Authorities

Fed. R. Civ. P. Rule 8 .............................................................................................. 5, 6, 10

Fed. R. Civ. P. Rule 9 ....................................................................................................10

**PRELIMINARY STATEMENT**

GMS's Opposition brief ("Opp.") confirms that the only facts GMS has alleged to support its claims are (i) the sales process on which Evercore advised GMS was ultimately unsuccessful, (ii) Defendant Wolfson supposedly did not spend enough time on the process, (iii) Evercore supposedly made an unauthorized statement to an unidentified "Company A", and (iv) although Defendants disclosed their relationship with Veritas (a potential bidder for GMS), Defendants did not disclose the entirety of that relationship.  From these allegations, GMS makes the logical leap that Evercore, despite having a contingency fee based on the value of the sale, intentionally conspired to sell GMS to Veritas at a low price, and thus tanked the sales process.  In other words, GMS has put forth a conspiracy theory, not a well-pleaded complaint.

Tacitly recognizing this, GMS seizes on isolated statements in Defendants' opening brief to claim Defendants are improperly arguing the facts on a motion to dismiss.  But those isolated statements have nothing to do with Defendants' legal analysis, which remains unrefuted by GMS.  This Court should dismiss the Second Amended Complaint.

**ARGUMENT**

**I.    GMS'S FIDUCIARY DUTY CLAIM FAILS FOR SEVERAL INDEPENDENT REASONS.**

**A.    GMS Ignores The Fiduciary Disclaimer.**

GMS downplays the Engagement Letter as not having "contractually created a fiduciary duty."  (Opp. at 6.)  But the Letter goes much further, plainly stating "Evercore is not acting . . . in a fiduciary capacity."  (Engagement Letter at 4.)  And GMS has no response to the clear New York law that such disclaimers require dismissal of fiduciary claims.  (Br. at 9.)  Indeed, GMS fails to cite any cases in which such a disclaimer was not enforced.  *See Apple*

*Recs., Inc.* v. *Capitol Recs., Inc.,* 137 A.D.2d 50 (N.Y. App. Div. 1988) (no mention of disclaimer);

*Sergeants Benevolent Ass'n Annuity Fund* v. *Renck*, 19 A.D.3d 107 (N.Y. App. Div. 2005) (same);

*NM Homes One, Inc.* v. *JP Morgan Chase Bank, N.A.*, 2011 WL 13267393 (S.D.N.Y. Mar. 10, 2011)

(same).

### B.    In Any Event, Defendants Did Not Owe Extracontractual Fiduciary Duties.

GMS incorrectly argues that, disclaimer aside, Defendants owed GMS independent

fiduciary duties because GMS trusted Evercore and because Evercore was GMS's financial

advisor.  (Opp. at 6-7, 9-10.)

That GMS trusted Evercore to exclusively communicate with "almost all" bidders (SAC

¶ 34) does not justify imposing extracontractual fiduciary duties.  GMS engaged Evercore to

assist in a sale—communicating with interested buyers was within the course of that

engagement.  (*See* Br. at 10-11.)

GMS misrepresents the contract and caselaw in claiming that under New York law, all

financial advisors are automatically fiduciaries.  (Opp. at 7, 9.)  Evercore was engaged to

"provide financial advisory services to [GMS] *in connection with the possible sale*" of GMS.

(Engagement Letter at 1 (emphasis added); *contra* Opp. at 9 (omitting this clause).)  Financial

advisors "who advise their clients on security investments" are fiduciaries.  (Br. at 11.)  But

Defendants were not GMS's investment advisers and GMS cites no cases holding that a bank,

hired solely to provide sell-side advice, is a fiduciary.  The engagement was a routine advisory

relationship for a standard sell-side transaction.  It bears no resemblance to an investment

management relationship.

GMS incorrectly asserts the engagement was not at arms-length because Defendants

advised GMS while maintaining a relationship with Veritas.  (Opp. at 7-8.)  In support, GMS

points out that Defendants' fees were based on GMS's sale value.  (*Id.*)  But allowing Veritas to purchase GMS at a discount would thus harm, not benefit, Evercore.  Defendants' compensation was not "directly tied to the . . . benefit they received from their relationship with Veritas." *Id.* at 7.

In claiming Evercore's contingency fee rendered the transaction not at arms-length, GMS argues that other fiduciaries sometimes use similar arrangements.  *Id.* at 7-8.  True, but irrelevant.  The fact that some fiduciaries might use contingency fees in some circumstances does not mean that everyone who uses contingency fees are fiduciaries.  *See, e.g.*, *Cooper Dev. Co.* v. *Friedman*, 1994 WL 172401, at *1 (S.D.N.Y. May 4, 1994).

GMS also fails to plead special circumstances, "such as control by one party of the other for the good of the other."  *Saul* v. *Cahan*, 153 A.D.3d 947, 949 (N.Y. App. Div. 2017) (internal citation omitted).  GMS's alleged "special circumstance" is that it hired Evercore based on Veritas's recommendation.  (Opp. at 8.)  But basing hiring decisions on references is not a special circumstance, but standard business practice.  And GMS offers no support for its argument that fiduciary duties must be imposed because it engaged Evercore to advise on the "most significant transaction in its history."  (Opp. at 10.)

GMS fails to analogize to the fiduciary duty found in *JPMorgan*.  *Id*. at 8-9.  There, JPMorgan hired an executive search firm under a contract that did not explicitly disclaim a fiduciary duty. *JPMorgan Chase Bank, N.A.* v. *IDW Grp., LLC*, 2009 WL 321222, at *10 (S.D.N.Y. Feb. 9, 2009).  And JPMorgan pleaded a "broader, ongoing relationship between [the parties] than that reflected in the Agreements." *Id.* at *9.  GMS pleads it entrusted Defendants with its business information because of the engagement, not any broader relationship.  (*See* SAC ¶ 57.)  GMS's reliance on *Frydman* (Opp. at 9), is similarly inapposite—defendants there did

not act solely in an advisory capacity. *Frydman & Co.* v. *Credit Suisse First Boston Corp.*, 272 A.D.2d 236, 236 (N.Y. App. Div. 2000); *see also supra* at 2.

GMS pleads no special circumstances as to Wolfson either. GMS hired Wolfson based on Veritas's recommendation. (SAC ¶ 14.) He did not provide GMS with investment advice or financing commitments, such that he might owe fiduciary duties.

**C.      GMS's Fiduciary and Contract Claims Are Still Duplicative.**

Even if GMS established that Evercore owed it fiduciary duties, its fiduciary and contract claims are duplicative. Attempting to separate these claims, GMS states the former "alleges that Defendants affirmatively breached the duties of loyalty and care, engaged in self-dealing, misrepresentation and concealment, and sabotaging the competitive process" while the latter alleges Defendants "fail[ed] to conduct a proper sale process designed to maximize value for GMS." (Opp. at 11.) But GMS fails to differentiate the facts underlying its conclusory fiduciary allegations and those supporting its contract claim. (*See* Br. at 12.)

Similarly, GMS asserts these claims have different harms. (Opp. at 12.) GMS pleads no specific harms for its contract claim. (*See* SAC ¶ 75.) But the fiduciary harms it alleges (*id.* ¶ 68) are damages recoverable under contract. *See, e.g.*, *Kaiser Aluminum Warrick, LLC* v. *US Magnesium, LLC*, 766 F. Supp. 3d 462, 473 (S.D.N.Y. 2025); *Smith* v. *Positive Prods.*, 419 F. Supp.2d 437, 454 (S.D.N.Y. 2005).

GMS argues that Defendants cannot simultaneously assert the contract imposes few obligations and still bars fiduciary duties. (Opp. at 10.) But the contract clearly obligated Evercore to provide "financial advisory services to [GMS] in connection with the possible sale" of GMS. (Engagement Letter at 1.) It is equally clear that Evercore did not owe fiduciary

duties to GMS.  (*Id.* at 4.)  Enforcing the Letter preserves contractual remedies while foreclosing extracontractual fiduciary claims.

## II.    GMS FAILS TO PLEAD A BREACH OF CONTRACT.

GMS attempts to recast the Letter as ambiguous to argue dismissal is premature (Opp. at 12-13), but does not explain the ambiguity in the contract's demand that "Evercore will provide financial advisory services as customarily may be provided by Evercore in connection with engagements of this type."  (Engagement Letter at 1.)  A contract is ambiguous if susceptible to more than one reasonable interpretation.  *Madeleine L.L.C.* v. *St.*, 757 F. Supp. 2d 403, 405 (S.D.N.Y. 2010).  This provision unambiguously ties Evercore's standard of performance to a benchmark, and GMS acknowledges Evercore "provided comprehensive financial advisory services."  (SAC ¶ 21.)

To the extent GMS alleges Evercore did not provide such services in a "customary" manner, it does so through speculation, based almost solely on GMS's information and belief, that fails to meet Rule 8.  Its contract claim alleges only that Evercore failed to "conduct a proper sale process designed to maximize value" (SAC ¶ 73) but does not explain how.  In the operative section of the SAC, GMS simply incorporates "all preceding allegations," (*id.* ¶ 70), leaving Defendants to guess GMS's contract theory.  "[P]leadings [must] permit a court to 'infer more than the mere possibility of misconduct.'"  *Kajoshaj* v. *NYC Dep't of Educ.*, 543 F. App'x 11, 15 (2d Cir. 2013) (expanding on *Boykin* v. *KeyCorp*, cited by GMS, (Opp. at 14), and noting *Boykin* was issued before *Ashcroft* v. *Iqbal*).  GMS's explanation does not permit such an inference.

To the extent Defendants can guess which allegations GMS believes breached the Letter, none states a claim.  GMS provides no factual support for its theory that Evercore

steered the transaction to Veritas.  The best GMS can muster is that although Evercore disclosed its relationship with Veritas (something GMS only begrudgingly admitted after receiving a Rule 11 letter), Evercore did not disclose the full extent of that relationship.  The Letter does not impose this requirement, but does give notice that Evercore may have relationships with "potential parties to a Transaction" and that nothing "shall limit or preclude Evercore" from carrying on business with entities "which may have interests different from or adverse to [GMS]."  ( Engagement Letter at 5.)  Likewise, GMS claims Evercore should not have told "Company A" that it needed to put in a higher bid.  Even if GMS explained how this breached the contract, GMS's justification for withholding "Company A's" identity is deficient.  (Opp. at 14-15.)  Rule 8 requires fair notice "to enable [Defendants] to answer and prepare for trial." *Park Ok-Gu* v. *Distrokid, Inc.*, 2026 WL 621823, *2 (S.D.N.Y. Mar. 4, 2026).  Where an entity is central to a claim, its identity must be disclosed.  (Br. at 14.) GMS does not explain how Defendants can answer the SAC or prepare for trial without this disclosure.[1]

Finally, to the extent GMS relies on Wolfson's purported lack of oversight, it fails to explain how this breached the contract, particularly given the Letter's merger clause.  *See infra* at 8, 11.

---

[1]     GMS claims it is aware of Company A's identity but withholds that information from Defendants, and this Court, for "confidentiality reasons in this public filing."  (SAC ¶ 40 n.1.) GMS could have filed a sealed complaint to protect Company A's identity while still disclosing it to Defendants and the Court.  But it did not.  And GMS's argument to distinguish Defendants' caselaw is unavailing.  (Opp. at 14-15.)

**III.    GMS'S BREACH OF THE IMPLIED COVENANT IS DUPLICATIVE AND DEFICIENT.**

**A.    GMS's Claim Is Duplicative of Its Contract Claim.**

GMS argues its implied covenant and contract claims are nonduplicative because holding otherwise "leave[s] GMS without any remedy." (Opp. at 17.)  It contends Defendants believe the Letter is too "vague to support a breach of contract claim" and therefore its implied covenant claim must "fill this gap." (*Id.*)  Defendants do not argue the contract is vague—only that GMS failed to plead a breach. (*See* Br. at 12-15; *supra* at 5-6.)  GMS cites no authority holding that dismissing a contract claim necessitates finding an implied covenant claim is nonduplicative.

Both claims rely on the same facts and GMS does not distinguish between them. (*See* Br. at 15-16; Opp. at 17-18.)  "Stripped of its conclusory references to good and bad faith conduct, [GMS's] breach of implied covenant claim ultimately alleges [Defendants] violat[ed] their agreement." *Polcom USA, LLC* v. *Affiliated FM Ins. Co.*, 551 F. Supp. 3d 290, 298 (S.D.N.Y. 2021).  And GMS seeks "consequential damages" recoverable under contract. (*See* Opp. at 18; *supra* at 4.)

**B.    GMS Fails to Plead a Breach of the Implied Covenant.**

In arguing a breach of the implied covenant, GMS relies on allegations that are conclusory, fail to support a breach, or contradict the pleadings. (Opp. at 15.)

GMS's bad-faith allegation merely rephrases the definition of a breach.  Such allegations require specific facts, which GMS does not plead. *Mancini* v. *UBS AG, New York Branch*, 757 F. Supp.3d 571, 579 (S.D.N.Y. 2024) (internal citation omitted).

GMS's remaining allegations describing how Evercore failed to "maximize value for GMS through a competitive sale process" (SAC ¶ 83) do not establish a breach.  Even if true,

Evercore was only obligated to advise GMS on a possible sale, which it did.  (*Id.* ¶¶ 21, 38.) The contract's no-guarantee clause is not "irrelevant," as GMS contends (Opp. at 15), because it shows GMS agreed Evercore could not guarantee maximizing value.  "[N]o obligation can be implied that would be inconsistent with other terms of the contractual relationship." *Mancini*, 757 F. Supp. 3d at 579 (internal citation omitted).

And in claiming the transaction team consisted of inexperienced advisors, GMS contradicts the SAC, which pleads the team had three senior and experienced advisers.  (SAC ¶¶ 81, 103.)

GMS's allegations as to Wolfson fail because the covenant cannot "undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." *M/A-COM Sec. Corp.* v. *Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (internal citation omitted).  GMS does not plead Evercore committed Wolfson to spend a particular number of hours working on the sale, or to communicate with GMS on particular devices, as commonly done in contracts where an individual is critical to a deal.  Nor does it explain how Wolfson's actions "directly destroy[ed] the value of the contract." *Id.*  And the contract's merger clause (Engagement Letter at 5) prohibits imputing promises that are not "so interwoven in the whole writing of [the] contract as to be necessary for the effectuation of the purposes of the contract." *SNS Bank, N.V.* v. *Citibank, N.A.*, 7 A.D.3d 352, 355 (N.Y. App. Div. 2004).

GMS also fails to explain how Evercore's decision to enforce its Tail Provision rights breached the covenant.  (Opp. at 16.)  In any case, Evercore's actions occurred after the contract—and covenant—were terminated.  (SAC ¶ 2.)

-8-

IV.    **GMS'S PROFESSIONAL NEGLIGENCE CLAIM IS DEFICIENT.**

GMS argues its professional negligence and contract claims are nonduplicative because Evercore owed GMS independent tort duties.  (Opp. at 19.)  But such duties only arise when "there would be liability even if no contract existed."  *BNP Paribas Mortg. Corp.* v. *Bank of Am. N.A.*, 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013).  GMS alleges Evercore's alleged duties stem from the engagement.  (Opp. at 19-20.)  Without the Letter, Evercore would not owe GMS any tort duties.  And GMS's reliance on *Bayerische* is misplaced—plaintiffs there were not parties to the contract.  *Bayerische*, *New York Branch* v. *Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 47 (2d Cir. 2012).

Foreclosed by the contract's bar on professional negligence claims (Br. at 18-19), GMS rewrites its pleadings, claiming this count encompasses "gross negligence, bad faith, and willful misconduct."  (Opp. at 21.)  But these are different claims, with different elements.  "[A] party may not use an opposition to a dispositive motion as a means to amend the complaint."  *Flowers* v. *Connecticut Light and Power Co.*, 774 Fed. App'x 33, 36 (2d Cir. 2019).

GMS argues banks owe a professional duty of care but only cites cases where financial institutions were investment managers.  (Opp. at 20.)  Defendants did not manage GMS's investments; they were only GMS's sell-side advisors.  *See supra* at 2.  A professional duty of care is inapplicable here.  (Br. at 19.)  As to Wolfson, GMS relies on inapposite authority addressing the duty of care owed by an officer, which Wolfson is not.  (Opp. at 20; *see also* *SAC* ¶ 5.)

The economic loss rule prohibits recovery here for economic losses.  (Br. at 20.)  Contrary to GMS's contention, damages for "reputational harm and damage to goodwill and third-party relationships" (Opp. at 22), are economic losses.  *Sky Coverage* v. *Alwex Inc.*, 194

A.D.3d 587, 587-88 (N.Y. App. Div. 2021); *Greater New York Auto Dealers Ass'n* v. *Env't Sys. Testing, Inc.*, 211 F.R.D. 71, 82 (E.D.N.Y. 2002).

## V.    GMS FAILS TO PLEAD INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.

GMS concedes this claim fails Rule 9 but argues it should be analyzed under Rule 8 (Opp. at 23-24), despite the SAC's fraud allegations.  (SAC ¶¶ 92-94.)  New York courts routinely apply Rule 9's standards to tortious interference claims where those claims sound in fraud.  *See, e.g.*, *TIC Park Centre 9, LLC* v. *Wojnar*, 2017 WL 7733134, at *6 (E.D.N.Y. Apr. 7, 2017).

And "the wording and imputations of the [SAC] are classically associated with fraud." *Rombach* v. *Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (explaining words like "misleading," "untrue," and "false" in a complaint implicate fraud).  GMS pleads Defendants made "misrepresentations" and provided "misleading information" to buyers, engaged in "bad faith," acted "fraudulent[ly]," and "misrepresent[ed]" and "concealed material information" from GMS." (SAC ¶¶ 35, 39, 41, 46, 65, 92.)  This claim sounds in fraud.

Moreover, GMS misrepresents Defendants' Rule 8 arguments in claiming their cited cases do not justify a Rule 9 standard.  (Opp. at 23.)  These cases explain why GMS's claim also fails under Rule 8, which GMS does not address.  (*Compare* Br. at 22 (discussing cases where intentional interference claims failed a plausibility standard) *with* Opp. at 23 (describing these cases as not supporting imposition of Rule 9).)

## VI.    GMS'S UNFAIR COMPETITION CLAIM IS DEFICIENT.

GMS argues its unfair competition claim is viable because "Evercore effectively competed against GMS using GMS own property." (Opp. at 25.)  This claim protects the "relationship existing between a merchant and [its] usual customers." *Cnty. Waste &*

*Recycling Serv., Inc.* v. *Twin Bridges Waste & Recycling, LLC*, 150 N.Y.S.3d 893 (N.Y. Sup. Ct. 2021) (internal citation omitted).  GMS does not explain how Defendants' actions constituted competition with GMS for its customers.  (Opp. at 25; *see* Br. at 23.)  "[D]riving down GMS' value" (*id.*) would not benefit Defendants because Evercore's fee was predicated on GMS's sale value.

**VII.   GMS FAILS TO PLEAD WOLFSON NEGLIGENTLY MISREPRESENTED HIS INVOLVEMENT.**

GMS states this claim is viable because the contract lacks non-reliance provisions. (Opp. at 25-26.)  But negligent misrepresentation claims for extracontractual statements can be barred by standard merger clauses.  *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007); *see also McBeth* v. *Porges*, 171 F. Supp. 3d 216, 227 (S.D.N.Y. 2016) (explaining non-reliance clauses are "more specific than clauses that the Second Circuit has construed to bar extra-contractual claims that require a showing of reasonable reliance").  The Letter's merger clause prohibits this claim.

GMS also fails to explain how Wolfson's alleged representations about his degree of involvement should Evercore be engaged are not forward-looking, opinion statements, or puffery.  (*See* Opp. at 26.)  These statements represented his subjective belief about his future expectations (SAC ¶ 105), and are inactionable.  And unlike the caselaw it cites, GMS does not plead, as required, that Wolfson made "a false representation that he [] should have known was incorrect."  *Century Pac., Inc.* v. *Hilton Hotels Corp.*, 2004 WL 868211, at *7 (S.D.N.Y. Apr. 21, 2004) (internal citation omitted).

Contrary to GMS's assertion (Opp. at 27) courts routinely reject negligent misrepresentation claims at the motion to dismiss stage when there are no "facts from which the Court can plausibly infer [] a 'special relationship.'"  *JTRE Manhattan Avenue LLC* v. *Capital*

*One, N.A.*, 585 F. Supp. 3d 474, 479 (S.D.N.Y. 2022).  And GMS's reliance on *Suez* to establish a special relationship between GMS and Wolfson is misplaced.   There, plaintiffs alleged "defendants initiated contact with plaintiffs, induced them to forebear from performing their own due diligence, and repeatedly vouched for the veracity of the allegedly deceptive information." *Suez Equity Invs., L.P.* v. *Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001). GMS does not allege Wolfson acted similarly.  In the absence of such circumstances, a special relationship is not sufficiently pleaded, even where other elements are met.  *Eternity Glob. Master Fund Ltd.* v. *Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 188-89 (2d Cir. 2004) (distinguishing *Suez*).

## VIII.    GMS'S DECLARATORY JUDGMENT CLAIM IS DEFICIENT.

GMS concedes that, should the other counts be dismissed, this Court lacks jurisdiction over the declaratory judgment claim.  (*See* Br. at 26; Opp. at 27-28.)   GMS also cites no authority where a court held a tail provision unenforceable under similar circumstances. (Opp. at 28.)

GMS is required to plead a live grievance (Br. at 25-26), but does not.  It acknowledges it has not engaged in discussions with bidders that could be captured by the Tail Provision.[2] *See* (Opp. at 28.)  Any argument that "were GMS to re-engage" (*id.*) with bidders does not implicate GMS's legal rights and is purely hypothetical.  (Br. at 25-26.)

---

[2]     GMS terminated the Engagement Letter on June 27, 2025, and under the Tail Provision, Defendants were entitled to a fee if GMS consummated a Transaction or entered into an agreement that subsequently resulted in a Transaction by March 27, 2026, the date of this brief.  Defendants reserve all rights to bring claims on those issues should it come out GMS has sold itself, and also to bring claims for the expenses to which Evercore is contractually entitled.

-13-

## CONCLUSION

GMS has already had two chances to amend its complaint.  This Court should now dismiss it with prejudice.

Dated:  March 27, 2026

Respectfully submitted,

*/s/ Matthew A. Schwartz*
Matthew A. Schwartz
Aneesa Mazumdar
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
schwartzmatthew@sullcrom.com
mazumdara@sullcrom.com

*Attorneys for Defendants Evercore Group L.L.C. and Ira Wolfson*

## CERTIFICATE OF COMPLIANCE

I, Matthew A. Schwartz, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) and Rule 4(B) of this Court's Individual Rules of Practices in Civil Cases that the foregoing Memorandum of Law was prepared using Microsoft Word and contains 3,496 words.

Dated:  March 27, 2026                    */s/ Matthew A. Schwartz*
                                         Matthew A. Schwartz

-14-